IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | Criminal Action No. 7:06CR00054 |
| Plaintiff, | |
| | **MEMORANDUM OPINION** |
| v. | |
| | By: Hon. Glen E. Conrad |
| CHARLES MCKINLEY PERRY, JR., | United States District Judge |
| Defendant. | |

This case is before the court on the defendant's motion to suppress evidence seized from the defendant at the scene of his arrest. The defendant contends that his stop and the subsequent search violated his rights under the Fourth Amendment because the stop was not based upon a valid warrant or an exception to the warrant requirement. For the reasons stated below, the court will deny the defendant's motion to suppress.

## FACTUAL BACKGROUND

On July 7, 2006, Detective Cook, of the Roanoke City Police Department, signed an affidavit in support of a search warrant for Room 10 at the Budget Inn on Orange Avenue. The warrant stated that the room to be searched was occupied by Charles Perry. (Gov't Ex. 1). A SWAT Team was assembled to assist in the search. At the hearing on the motion to suppress, several officers testified that there was a briefing related to the search warrant. At the briefing prior to the execution of the search warrant, the officers on the team were told that the defendant was a convicted felon and was likely to be armed.

Before the search warrant was executed, officers determined that the defendant's white Jeep Cherokee was not at the Budget Inn. The Jeep was subsequently located in a parking lot on the 300 block of Hershberger Road.

When the officers arrived at the parking lot, they observed the defendant and two other males in the vehicle. The officers began to approach the vehicle, and saw the men making motions consistent with stuffing something between the driver's seat and the center console of the vehicle.

The officers removed all three men from the vehicle and detained them. Upon searching the vehicle, the officers found two firearms, a loaded magazine, and a glass smoking device. The defendant was told of the search warrant for his motel room, and he was transported to the motel so that he could be present during the execution of the search warrant.

On July 13, 2006, the defendant was indicted by a grand jury for the Western District of Virginia for knowingly possessing a firearm with a removed or obliterated serial number, after having been convicted of a felony (Count One); and knowingly possessing a firearm from which the serial number had been removed, obliterated, or altered (Count Two). The defendant then filed this motion to suppress, and the court held a hearing on the motion on December 8, 2006.

## DISCUSSION

The defendant has moved to suppress the evidence seized as a result of his arrest. The defendant challenges the validity of his seizure and search, arguing that the officers did not have reasonable articulable suspicion to support the stop and seizure. The government

2

has responded that the detectives did have reasonable suspicion to elevate what began as a police-citizen encounter into a Terry stop, which ultimately resulted in the defendant's arrest.

The Fourth Amendment protects the "right of the people to be secure in their persons, houses, papers, and effects against unreasonable searches and seizures." U.S. Const. amend. IV. Some types of interactions between citizens and police are not subject to the protections of the Fourth Amendment, however. For example, the United States Court of Appeals for the Fourth Circuit does not consider a brief police-citizen encounter to be a seizure for the purposes of a Fourth Amendment analysis. United States v. Weaver, 282 F.3d 302, 309 (4th Cir. 2002) (citing Florida v. Bostick, 501 U.S. 429, 434 (1991)).

Such an encounter becomes a seizure, subject to Fourth Amendment protections, when "in view of the totality of the circumstances surrounding the 'stop,' a reasonable person would not feel free to leave or otherwise terminate the encounter." Id. (internal citations omitted). This type of seizure is presumptively unlawful, and the government therefore bears the burden to prove that the search and seizure falls into one of the established exceptions. See United States v. Smith, 396 F.3d 579, 583 (4th Cir. 2005). One such exception to the warrant requirement is that an officer may stop an individual for further investigation under Terry v. Ohio, 392 U.S. 1 (1968), when he reasonably believes that criminal activity may be afoot. United States v. Mayo, 361 F.3d 802, 805 (4th Cir. 2004) (internal citation omitted). An investigative stop creates a minimal intrusion; the reasonable suspicion standard is therefore "not onerous." Park v. Shiflett, 250 F.3d 843, 850 (4th Cir. 2001).

3

In this case, the police-citizen encounter was of very short duration, involving police officers entering the parking lot and walking towards the defendant's car. The government concedes, and the court agrees, that the encounter became a Terry stop as soon as the officers approached the defendant's car and observed suspicious behavior.

The next issue for the court then becomes whether the officers had reasonable articulable suspicion that criminal activity was afoot at the point when the police-citizen encounter became a Terry stop. The court must consider the totality of the circumstances when determining whether a stop is justified by reasonable suspicion, and factors which do not inspire suspicion on their own can create reasonable suspicion in combination. United States v. Perkins, 363 F.3d 317, 321 (4th Cir. 2004) (internal citations omitted). In addition, the court "must give due weight to common sense judgments reached by officers in light of their experience and training." Id.

At the time the defendant was seized, officers knew of several factors which combined to create reasonable suspicion. First, the officers knew that the defendant was a convicted felon, who was reported to carry a firearm. Second, the officers were aware that a search warrant had been issued as to the defendant and the defendant's motel room.[1] Third, the officers observed the men in the car appear to stuff something between the driver's seat and center console of the vehicle. Based on the above factors, the court

---

[1] The defendant's written motion and memorandum in support assert that the search warrant did not establish probable cause to support a search of the defendant's person away from his motel room. However, the court finds it unnecessary to reach the issue of whether the warrant provided probable cause for such a search. Instead, the court believes that the officers might reasonably consider the warrant, and the facts alleged in support of the warrant, as one factor in the totality of the circumstances in assessing the existence of reasonable suspicion for a Terry stop.

4

concludes that the stop and search of the defendant was justified by reasonable suspicion when examined under the totality of the circumstances.

At the time the officers approached the defendant's vehicle, they had verified that the Jeep Cherokee in the parking lot belonged to the defendant. In addition, Detectives Haddox, Maddy, Helton, and Young testified at the hearing that the officers had been briefed about the search warrant for the defendant's residence, and knew that the defendant was a convicted felon who was likely to be armed. The officers therefore had reasonable suspicion that Perry was armed before he was stopped. In this type of situation, the concern for officer safety expressed in Terry and Michigan v. Long, 463 U.S. 1032 (1983), is even more cogent. See United States v. Pitts, 35 F. Supp. 2d 500, 504 (E.D. Va. 1999) (observing that concern for officer safety is even more apparent when police have a reasonable suspicion that a person is armed, than when the reasonable suspicion that a person is armed arises after the initial stop).

The officers were also aware that a search warrant had been issued for the defendant's motel room and the defendant. See United States v. Taylor, 857 F.2d 210, 213 (4th Cir. 1988) (a search warrant for a residence, based upon probable cause that a resident was engaged in drug trafficking, was one factor justifying an investigative stop of an automobile when the automobile was traveling toward the alleged site of distribution). The court does not reach the issue of whether the search of the defendant's person could have been based upon the warrant issued. However, the officers knew of the warrant and the facts stated therein, a proper factor in the officers' assessment of reasonable suspicion that criminal activity was afoot.

5

Finally, Detectives Haddox, Helton, and Young testified that they observed the occupants in the front seat of the vehicle attempting to stuff something between the two front seats. They also noted that this type of behavior was consistent with an attempt to conceal a firearm. These suspicious movements were another suitable factor in the officers' analysis of reasonable suspicion. See, e.g., United States v. Turner, 933 F.2d 240, 244 (4th Cir. 1991) (considering that the officer saw the defendant bend over as if to hide something underneath his seat).

The government has articulated three factors in support of reasonable suspicion to stop the defendant: (1) the officers knew that the defendant was a convicted felon, who often carried a firearm; (2) the officers knew that a search warrant had been issued for the defendant and the defendant's motel room; and (3) the officers observed the men in the car making suspicious "stuffing" movements. On the basis of these factors, the court concludes that there was reasonable suspicion to stop the defendant.

Furthermore, the court concludes that all subsequent actions taken by the officers were lawful. As soon as the officers removed the three men from the vehicle, the saw a firearm in plain view in the car. When the officers saw the gun, there was probable cause to arrest the defendant, because the officers knew that the defendant was a convicted felon. See United States v. Wells, 98 F.3d 808, 810 (4th Cir. 1996). After that point, any further search was permissible as a search for weapons, United States v. Holmes, 376 F.3d 270, 280 (4th Cir. 2004) (internal citations omitted), and as a search incident to the defendant's arrest, New York v. Belton, 453 U.S. 454, 460 (1981). Therefore, all evidence seized as a result of the stop is admissible.

## CONCLUSION

Because evidence was seized pursuant to a valid stop of the defendant and law enforcement officers had reasonable articulable suspicion to stop and search the defendant, the defendant's motion to suppress will be denied.

The Clerk is directed to send certified copies of this Memorandum Opinion and the accompanying Order to all counsel of record.

ENTER: This 22ᵈ day of December, 2006.

/s/ Glen E. Conrad
United States District Judge